## Levy's Admr., et al. v. Globe Bank & Trust Co.

(Decided May 17, 1911.)

### Appeal from McCracken Circuit Court.

1. Insurance Premiums Paid in Fraud of Creditors—Where an insolvent husband overdraws his account in bank, and uses the money in payment of premiums upon a policy of insurance upon his own life payable to his wife, the bank can recover the premiums so paid, from the wife, under Section 654 of the Kentucky Statutes, which provides that an amount of the policy equal to the premiums so paid shall inure to the creditors where the premium is paid with intent to defraud a creditor.

2. Same—Fraud—Where a husband, while insolvent, obtains money from a bank by overdraft and uses it to pay premiums upon a policy upon his own life which is payable to his wife, the law imputes to him the natural result of his act which is, in law, fraudulent as to his creditors, although not shown to have been actually so.

3. Same—The use of money so obtained, in paying premiums upon his wife's policy, was, to that extent, an unlawful diminution of his estate and an unjust enrichment of her estate, and is constructively a fraudulent act within the meaning of Section 654 of the Kentucky Statutes.

E. H. PURYEAR for appellant.

D. G. PARK for appellee.

Opinion of the Court by Judge Miller—Affirming.

The appellee conducted a banking business in Paducah, and Will I. Levy, a merchant of that place, ran an account with the bank from March 19, 1904, to and including May 2, 1904. During that time Levy made four deposits in the bank which aggregated $1,590.96, and checked out $1,920.52, leaving an overdraft due from him to the bank upon the close of the account on May 2 of $329.56.

At no time was there a balance to Levy's credit. Levy died in May, 1904, insolvent, but leaving a heavy life insurance, most of which was payable to his wife, the appellant, Hannah Levy. Of the amounts paid by the bank in honoring Levy's checks, $130.95 was paid to the Mutual Life Insurance Company of New York in payment of a premium upon a policy upon Levy's life in that company, payable to his wife, while $220.94 was paid upon policies of like character in the Equitable

Life Assurance Society. These payments aggregated $351.69, which is more than Levy's overdraft. The appellee brought this suit against Hannah Levy and recovered a judgment against her for $329.56, and from that judgment she prosecutes this appeal. The action is brought by virtue of the last clause of section 654 of the Kentucky Statutes, said section in full, reading as follows:

"A policy of insurance on the life of any person expressed to be for the benefit of, or duly assigned, transferred, or made payable to any married woman, or to any person in trust for her, or for her benefit, by whomsoever such transfer may be made, shall inure to her separate use and benefit, and that of her children, independently of her husband or his creditors, or any other person effecting or transferring the same or his creditors. And a married woman may, without consent of her husband, contract, pay for, take out and hold a policy of insurance upon the life or health of her husband or children, or against loss by his or their disablement by accident, and the premiums paid on any such policy shall be held to have been her separate estate, and such policy shall likewise inure to her separate use and benefit, and that of her children, free from any claim of her husband or others. But if the premium on any policy in this section mentioned is paid by any person with intent to defraud his creditors, an amount equal to the premium so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the statute of limitations."

The proof shows nothing more than an ordinary transaction between a bank and a depositor. No representations were made by Levy to the bank in getting the money, and it does not appear that he had been a former customer of the bank. So far as this record shows, the account began March 19, 1904, and closed May 2, 1904, covering a period of about six weeks. The policy in the Mutual Life Insurance Company of New York had been issued in 1901, while the two policies in the Equitable Life Assurance Society were issued in 1898.

The appellant claims that since appellee has wholly failed to show there was any intent on Levy's part to defraud the bank, and since the statute, in express terms, requires that there should be such intent, the pe-

tition should have been dismissed. No actual fraud has been shown; and, this ground would seem to be well taken, unless the insolvency of Levy at the time he withdrew the money from the bank and applied it to the payment of these insurance premiums was a constructive fraud upon the bank, and was, for that reason, within the meaning of the statute. This question was before the court in Morehead's Admr. v. Mayfield, 109 Ky., 51, 58, which was a suit by Morehead's Admr. to recover premiums which he had paid upon an insurance policy originally payable to himself, but which he had assigned to his wife when he was insolvent.

In sustaining the suit of the creditors the court said:

"We are also of opinion that under section 654, supra, the premium paid by decedent, Morehead, for the policy in May, 1895, was paid in fraud of creditors—at least, this was the effect of the assignment to appellee—and under that section the creditors are entitled to this premium so paid, with interest. The provision of the section is: 'But if the premium on any policy in this section mentioned is paid by any person with intent to defraud his creditors,' etc. And while at the time of the payment, in May, 1895, there may have been no intention to defraud creditors, yet the assignment to appellee would have defeated the purpose of this provision, if the amount of this premium be not refunded to the estate. Such a devise can not be resorted to to defeat the provisions of this section. We hold that while decedent might lawfully assign to appellee, his wife, the policy in question, and that the proceeds would vest in her, yet this was the same, in effect, as if the policy had originally been taken for her benefit. The creditors of decedent are entitled to an amount equal to the premiums paid."

If Levy had been solvent at the time he obtained this money from the bank and used it in paying the premiums upon his wife's insurance policies there could have been no recovery against her; but as he was then insolvent, he will not be permitted to divert his estate for his wife's advantage and to his creditor's disadvantage. And when he did so, while insolvent, the law imputes to him the natural result of his acts, which were, in law, fraudulent as to creditors, although not shown to have been actually so. The use of the money obtained from the bank, in paying insurance premiums owing by Levy's

wife, was to that extent an unlawful diminution of his estate and an unjust enrichment of her estate; and that being true, it is, constructively, a fraudulent act within the meaning of the statute.

The language of the opinion above quoted is clear and unequivocal, and, under the proof in this case, sustains the judgment of the circuit court.

Judgment affirmed, with damages.